IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Regina Ann McCormick,          :

                                     :    Case No. 1:10-cv-345

              Plaintiff,         :

                                       :    Chief Judge Susan J. Dlott

    v.                          :

                                       :    ORDER GRANTING DEFENDANTS'

Miami University, *et al.*,          :    MOTION TO DISMISS and

                                       :    DISMISSING THIS CASE

             Defendants.       :

This matter is before the Court on the Defendants' Motion to Dismiss. (Doc. 10.) On

April 23, 2010, Plaintiff Regina McCormick, a former graduate student of Miami University,

filed this lawsuit against the University, three named members of the University's faculty (Karen

Maitland Schilling, Terri Messman-Moore, and Margaret Wright), and John and Jane Does.[1]

McCormick asserts the following claims: (1) Count 1 – disability discrimination, pursuant to the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12131[2] and Ohio Revised Code §§ 4112.02

_____

[1] McCormick sues all three faculty members and John and Jane Does in their individual
and official capacities.

[2] Defendants note in their Motion to Dismiss that it is unclear from Plaintiff's Complaint
whether she intends to bring a claim under Title I or Title II of the ADA, and they assume based
on the nature of Plaintiff's claim, that she intended to bring a Title II claim:

     The Complaint alleges in paragraph 5 that "this matter is brought pursuant to 42
     U.S.C. §§ 12131 *et seq*.," which is a reference to Title II of the ADA covering
     discrimination in the provision of public services. The Complaint alleges in
     paragraph 39, however, that Defendants' allegedly discriminatory practices
     violate 42 U.S.C. § 12112, which is a reference to Title I of the ADA covering
     discrimination in employment. Defendants assume that Plaintiff is bringing this
     matter pursuant to Title II, as alleged in paragraph 5 of the Complaint, because
     there is no allegation in the Complaint that Plaintiff was an employee of Miami
     University or that her failure to be promoted into the doctoral program constituted

and 4112.99; (2) Count 2 – retaliation, in violation of 42 U.S.C. § 1981 and Ohio Revised Code §§ 4112.02 and 4112.99; (3) Count 3 – disability discrimination in violation of the federal Rehabilitation Act; (4) Count 4 – discrimination on the basis of race, in violation of 42 U.S.C. § 1981 and Ohio Revised Code § 4112.99; (5) Count 5 – breach of express contract; and (6) Count 6 – breach of policy, practice, and/or procedure.

Defendants move to dismiss McCormick's claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim upon which relief can be granted. Specifically, Defendants argue that: McCormick's discrimination and retaliation claims under 42 U.S.C. § 1981 fail as a matter of law because such claims cannot be brought against state actors; McCormick's federal disability claims are barred by the two-year statute of limitations that applies to Title II of the ADA and the Rehabilitation Act; and McCormick's state law claims cannot be pursued in this Court because they are barred by the Eleventh Amendment and/or Ohio Revised Code §§ 9.86 and 2743.02.

For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss. (Doc. 10).

## I. BACKGROUND

The facts set forth in McCormick's Complaint are as follows. On March 9, 2000, the Miami University Psychology Department admitted McCormick into its graduate program for

---

an employment action. Nor does the Complaint allege that Plaintiff complied with the administrative prerequisites for bringing a claim under Title I of the ADA."

(Doc. 10 at 5 n. 2.) In her Response, Plaintiff does not clarify whether she intended to bring a claim under Title I or Title II orf the ADA. Therefore, for the reasons set forth by Defendants, the Court construes Plaintiff's ADA claim as a Title II claim.

the 2000 fall semester.  On May 9, 2005, McCormick completed her Master's thesis.

Approximately one year later, on April 28, 2006, Defendant Dr. Schilling, who was

McCormick's advisor and the Dean of the College of Arts and Sciences, presented the faculty

with a vote to promote McCormick to doctoral status.  McCormick's promotion was denied by a

vote of seven to three.  The alleged reason for denying McCormick advancement to doctoral

status was that McCormick would take too long to complete her doctoral dissertation.  However,

the termination letter that McCormick later received contained no explanation for the faculty's

decision not to allow her to continue with her studies.

McCormick alleges that she was discriminated against on the basis of both race and

disability during the course of her enrollment at Miami University.  In 2002, McCormick was

diagnosed with several medical conditions including plica syndrome, knee and wrist

dysfunction, degenerative disc disease, and rheumatoid arthritis.  Regarding the general effect of

her conditions on her graduate studies and the accommodations she requested, McCormick

alleges that:

> Her illnesses and treatment drastically slowed her progress in her graduate studies
> at Miami University.  The faculty was well aware of Plaintiff's health issues and
> the fact that it was dramatically slowing progress in her studies.
>
> As a direct and proximate cause of her illness, Plaintiff requested reasonable
> accommodation in the form of additional time within which to complete her Ph.D.
> program.  The reasonable accommodation was required due to the treatment
> plaintiff was undergoing with regard to her disabilities.  In all other respects,
> plaintiff was qualified and able to perform the functions required for completing
> the program at Miami University.

(Doc. 1 ¶¶ 15, 16.)

McCormick does not specifically allege when she first experienced symptoms or when

the illnesses began to affect her performance.  However, she suggests generally that her

problems with the faculty began in 2001.  During that year, Defendant Dr. Messman-Moore, one of McCormick's professors, agreed to give her a C+ in a course as a place-holder so she could retain her financial aid with the understanding that she would complete her course work at a later time.  Thereafter, according to McCormick, Dr. Messman-Moore denied her the previously agreed-upon opportunity to complete the course work and instead required her to retake the course in its entirety.

In 2002, after receiving the medical diagnosis described above, McCormick reported her conditions to Dr. Schilling and requested accommodations.  McCormick claims that notwithstanding her request, she continued to experience problems with the faculty.  In or around 2002 to 2003, another professor, Dr. McConnell,[3] docked McCormick a full letter grade on a paper that she turned in late, resulting in a C grade.  McCormick requested permission to do additional work to offset the grade, but Dr. McConnell denied the request.

In January 2003, McCormick received a letter from Dr. Len Mark on behalf of the faculty informing her that although she had earned two Cs, which normally would be grounds for dismissal from the program, the faculty wished to allow her to continue her studies.  He warned, however, that she was unlikely to be promoted to doctoral status unless she made dramatic improvements in the quality of her work.  The letter set time limits within which she was to complete certain tasks.

During that same month, McCormick was diagnosed with an arthritis-related condition in her left wrist that required surgery.  McCormick elected to finish the school year before scheduling the surgery.  She informed Dr. Schilling and some of her other professors of her

_____

[3] Dr. McConnell is not names as a defendant in this lawsuit.

4

condition and requested that they give her additional time to complete her assignments.

On May 7, 2003, Dr. Mark sent another letter to McCormick on behalf of the faculty.  He expressed disappointment with her inability to timely complete the tasks that he had set forth for her in the January 2003 letter, and he warned that the likelihood of the faculty supporting her promotion to doctoral status was even less than it had been in January 2003.  Nonetheless, the letter indicated that they would allow her to carry on with her work.

After receiving that letter, McCormick improved her performance, receiving a 4.0 grade point average (GPA) during several semesters.  Upon completion of the course work for her Master's degree, she had a cumulative GPA of 3.72.  In August 2005, she successfully defended her Master's thesis and received an A grade.

Prior to and upon completion of her Master's thesis, McCormick formed a "comps committee" for purposes of studying for and taking her comprehensive examination and proceeding with her doctoral proposal as outlined in the Miami University Policies and Procedures Manual.  In or around 2003 and 2004, McCormick asked Defendant Wright to support her bid for promotion to the doctoral program and to assist her in collecting material for the comprehensive examination.  Despite the fact that Wright previously had elicited McCormick's assistance in obtaining mastery on multicultural issues in psychology, Wright told McCormick that she was not supportive of McCormick's promotion to doctoral status and that she did not want to have anything to do with McCormick.  McCormick reported Wright's conduct to Dr. Schilling, but no action was taken.

Dr. Schilling suggested that McCormick speak to Dr. Messman-Moore about her doctoral progress.  McCormick alleges that during the meeting, Dr. Messman-Moore screamed at her and

used inappropriate language.  Once again, McCormick reported this matter to Dr. Schilling, but no formal action was taken.

McCormick also alleges that Dr. Schilling interrupted her attempt to prepare for advancement by requiring her to write two papers.  Dr. Schilling represented that the papers would be submitted to the faculty who would decide McCormick's promotion to doctoral status. However, according to McCormick, Dr. Schilling never distributed those papers to the faculty.

The faculty ultimately voted to deny McCormick's promotion to doctoral status. McCormick claims that Dr. Schilling had repeatedly communicated to her that the time limits for the Ph.D. program were flexible.  However, the reason given for denying her admission to the doctoral program is that the faculty believed, based on the amount of time that it took her to obtain her Master's degree, it would take too long for her to obtain a Ph.D.  Plaintiff claims that Defendants discriminated against her on the basis of disability and denied her a reasonable accommodation, specifically additional time within which to complete the Ph.D. program.

McCormick also alleges that Defendants discriminated against her on the basis of race, and she claims that after the faculty's vote, Dr. Schilling spoke to McCormick's brother about the pervasiveness of racism within the Miami University Psychology department.  Dr. Schilling stated that some people in the Psychology Department, including Dr. Schilling, may have practiced racism at times.  Dr. Schilling also commented that were she in a position to change the faculty members' minds and actions, McCormick may not have been denied advancement to doctoral status.  Later, Dr. Schilling stated to McCormick that Miami University was a difficult University for any African-American student.  Plaintiff reported the matter to Miami University's Office of Equal Education Opportunity ("OEEO").  The OEEO concluded that no

discrimination had occurred.

## II.     STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint

for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A district

court "must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais and Co.,*

*Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).  However, this tenet is inapplicable to legal conclusions, or

legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50

(2009).

To withstand a dismissal motion, a complaint "does not need detailed factual

allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of

the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

The Court does not require "heightened fact pleading of specifics, but only enough facts to state

a claim for relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  "[O]nce a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint."  *Twombly*, 550 U.S. at 563.

The Supreme Court gave the following additional guidance in *Iqbal*:

> In keeping with these principles a court considering a motion to dismiss can
> choose to begin by identifying pleadings that, because they are no more than
> [legal] conclusions, are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be supported by
> factual allegations.  When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly give rise

7

to an entitlement to relief.

129 S. Ct. at 1950.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. Rule 12(b)(1) motions to dismiss based on subject matter jurisdiction generally come in two varieties – those which attack the complaint on its face and those which attack the existence of subject matter jurisdiction in fact. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In a "facial attack," the basis of the challenge is that a plaintiff has failed to faithfully recite all the jurisdictional predicates necessary for the Court to exercise subject matter jurisdiction over the matter. *Id*. at 1134-35. In contrast, a party makes a "factual attack" when the party challenges the actual existence of the jurisdiction even though the complaint contains the formal allegations necessary to invoke jurisdiction. *Id*. at 1134-35.

Under both forms of attack, the plaintiff has the burden of proving the existence of subject matter jurisdiction. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). When reviewing a facial attack, the Court must consider the allegations contained in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). When the Court reviews a factual attack on subject matter jurisdiction, no presumption of truthfulness applies to the factual allegations of the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The Court is free to rely on affidavits or any other evidence to satisfy itself as to the existence of its power to hear the case. *Id*.

## III.   ANALYSIS

A.    **Section 1981 Claims**

In Counts 2 and 4 of her Complaint, Plaintiff asserts claims for retaliation and race discrimination under 42 U.S.C. § 1981.  Defendants ague that those claims are either barred by the Eleventh Amendment or barred by the fact that 42 U.S.C. § 1983 provides the exclusive remedy for claims of race discrimination or retaliation when such claims are asserted against state actors.

1.    **Eleventh Amendment**

Plaintiff's § 1981 claims against Miami University and against Defendants Schilling, Messman-Moore, and Wright in their official capacities are barred in whole or in part by the Eleventh Amendment.  As pertains to Plaintiff's claim against Miami University, the Sixth Circuit has unequivocally stated that the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments."  *Thiokol Corp. v. Dep't of Treas.*, 987 F.2d 376, 381 (6th Cir. 1993); *see also Baba-Singhri v. Central State Univ.*, No. 3:03cv429, 2008 WL 656497, at *5 (S.D. Ohio Mar. 10, 2008) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000)); *Adamow v. Miami Univ.*, No. C-1-05-104, 2007 WL 2886345, at *9 (S.D. Ohio Sept. 27, 2007).  As a public institution, Miami University is considered an arm of the State of Ohio.  *See Johnson*, 215 F.3d at 571; *Adamow*, No. C-1-05-104, 2007 WL 2886345, at *9.  Therefore, the Eleventh Amendment bars Plaintiff from pursuing § 1981 claims against Miami University in federal court.  *See Johnson*, 215 F.3d at 571 (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)); *Henry v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 162 F. Supp. 2d 794, 799 (S.D. Ohio 2000).

Plaintiff's official capacity claims against Defendants Schilling, Messman-Moore, and

Wright are also barred except to the extent that Plaintiff seeks prospective injunctive relief.[4]  *See McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000) ("[t]he Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities."); *Baba-Singhri*, No. 3:03cv429, 2008 WL 656497, at *5.

## 2.        Pleading § 1981 Claims Against State Actors

The § 1981 claims not barred by the Eleventh Amendment include Plaintiff's official capacity claims for prospective injunctive relief and individual capacity claims against Defendants Schilling, Messman-Moore, and Wright.  Defendants argue that the Court should dismiss those claims under Rule 12(b)(6) because 42 U.S.C. § 1983 provides the exclusive remedy for asserting § 1981 claims against state actors and Plaintiff failed to bring her claims under § 1983.  Defendants base their argument in large part on *Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989), in which the Supreme Court held that  "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a *state actor*."  Defendants Schilling, Messman-Moore, and Wright argue that they are state actors, whether sued in official or individual capacity, and therefore cannot be directly sued under § 1981.  To address Defendants' argument, the Court begins with an analysis of *Jett*.

---

[4] The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  However, in the same opinion, the Supreme Court noted that officials may still be sued for injunctive relief because  "'official capacity' actions for prospective relief are not treated as actions against the State."  *Id*. at 71 n.10.

a.    *Jett v. Dallas Independent School District*

In *Jett*, 491 U.S. at 707, the Supreme Court was faced with the question of "whether 42 U.S.C. § 1981 provides an independent federal cause of action for damages against local governmental entities, and whether that cause of action is broader than the damages remedy available under 42 U.S.C. § 1983, such that a municipality may be held liable for its employees' violations of § 1981 under a theory of respondeat superior."  At the time that *Jett* was decided, § 1981 provided that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

42 U.S.C. § 1981 (1870) (amended 1991).  Section 1983 provided then and now as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

There are several important differences between the two statutes.  First, § 1981 is a source of substantive rights, but does not provide an explicit cause of action to protect those rights.  In contrast, § 1983 is not itself a source of substantive rights.  Rather, § 1983 contains an express cause of action to remedy violations of rights located in other federal statutes and in the United States Constitution.  *Wilson v. Garcia*, 471 U.S. 261, 278 (1985).  Second, § 1981 reaches both private and public action, while § 1983 is limited to violations of federal law committed by individuals acting under color of state law.

11

Prior to *Jett*, the Supreme Court had concluded that § 1981 contains an implied cause of action against private defendants.  *Jett*, 491 U.S. at 731-32.  The question in *Jett* was whether the Court should imply a similar cause of action against governmental defendants.  Based on its reading of the federal civil rights statutes, the *Jett* Court[5] ultimately held that § 1981 does not provide an independent federal cause of action against state actors.  *Id*. at 735 (emphasis added).  The Court noted that when it had previously read § 1981 as reaching private action and containing an implied damages remedy against private actors, it did so only because "there existed no other remedy to address such violations of the statute."  *Id*. at 732.  The *Jett* Court declined to imply such a remedy in the context of state action because by enacting § 1983, Congress had already established its own remedial scheme for dealing with violations of federal constitutional and statutory rights by state actors.  *Id*. at 731-32.  Specifically, the Supreme Court explained that:

> In the context of the application of § 1981 . . . to private actors, we had little choice but to hold that aggrieved individuals could enforce this prohibition, for there existed no other remedy to address such violations of the statute.  That is manifestly not the case here, and whatever the limits of the judicial power to imply or create remedies, it has long been the law that such power should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute.

*Id*. (some internal citations and quotations marks omitted).  For a brief period following *Jett* and preceding the Civil Rights Act of 1991, it was generally understood that "even though § 1981 creates an implicit cause of action against private defendants, state actors . . . may not be sued

---

[5] A plurality of the Supreme Court in *Jett* engaged in a lengthy discussion of the legislative history of §§ 1981 and 1983.  The Court need not repeat that discussion herein.  In a brief opinion concurring in part and concurring in the judgment, Justice Scalia stated that he joined the judgment and most of the opinion of the Court, but that he did not join the portions of the opinion which rely on legislative history. *Jett*, 491 U.S. at 738 (Scalia, J., concurring).

directly under that statute." *Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008).

> **b.** **Status of *Jett* Following the Passage of the Civil Rights Act of 1991**

That understanding was called into question by the passage of the Civil Rights Act of 1991, which added two new subsections to § 1981. As amended, § 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

After the enactment of the Civil Rights Act of 1991, circuit courts split on whether the new subsection (c) to § 1981 created a private cause of action against state actors, thus overruling the Supreme Court's decision in *Jett*. *Compare McGovern v. City of Philadelphia*, 554 F.3d 114, 117-18 (3d Cir. 2009) (holding that the 1991 amendments to § 1981 did not create an implied private right of action against state actors beyond that provided in § 1983, and noting that "§ 1981(c) created a substantive right that both private and state actors must refrain from

violating, but the amendment did not create a remedy for that violation"), *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006) ("We therefore conclude that even after the 1991 amendments to § 1981, damages claims against state actors for § 1981 violations must be brought under § 1983."), *Oden v. Oktibbeha County*, 246 F.3d 458, 463-64 (5th Cir. 2001) ("[W]e are not willing to deviate from the Supreme Court's analysis of § 1981 in *Jett*."), *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) ( "§ 1981(c) makes clear that the section creates a right that private or state actors may violate but does not itself create a remedy for that violation."), *and Dennis v. County of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir. 1995) ("We do not believe that [*Jett*] was affected by the Civil Rights Act of 1991, which added subsection (c) to § 1981."), *with Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996) ("[W]e conclude that the amended 42 U.S.C. § 1981 contains an implied cause of action against state actors, thereby overturning *Jett*'s holding.").

In 2008, the Sixth Circuit sided with the majority of the circuits to have weighed in on the issue, holding that *Jett* continues to be binding authority and that "'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'"  *Arendale*, 519 F.3d at 598-99 (quoting *Jett*, 491 U.S. at 733); *see also Grinter v. Knight*, 532 F.3d 567, 576-77 (6th Cir. 2008) ("*Jett* continues to control following amendments to § 1981 to add subsection (c) in 1991. Nothing about the amendments suggests that Congress's intent was to overrule *Jett*.  A panel of this court assumed without discussion that the amendments did not overrule *Jett* as applied to state actors sued in their official capacities.").

      **c.**    **Application of *Jett* to Official Capacity and Individual Capacity Claims**

14

As stated above, the Supreme Court's holding in *Jett* was that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a *state actor*." *Jett*, 491 U.S. at 735 (emphasis added). The "state actor" at issue in *Jett* was a municipal body, the Dallas Independent School District. Accordingly, in jurisdictions that still consider *Jett* to be binding authority, including the Sixth Circuit, it is well-settled that a municipality or a state governmental unit may not be sued directly under § 1981. *See Arendale*, 519 F.3d at 598-99 (quoting *Jett*, 491 U.S. at 733) (§ 1983 provides the exclusive remedy for violations by state governmental units).

The Sixth Circuit has held that *Jett* applies with equal force to official capacity suits. *See Grinter*, 532 F.3d at 576 ("Section 1981 is unavailable to Grinter as a vehicle to pursue a damages claim against Knight in his official capacity" because § 1983 "'provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981' when the claim is asserted against a state actor in his official capacity." (quoting *Jett*, 491 U.S. at 735.)); *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 WL 1140750, at *2 (6th Cir. Aug. 8, 2000) (concluding that "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of actions seeking equitable relief against state actors alleging violation of their rights under § 1981"). Therefore, pursuant to Sixth Circuit precedent, McCormick cannot bring official capacity claims against Defendants Schilling, Messman-Moore, and Wright directly under § 1981.

What is less clear is the effect of *Jett* on claims against state employees sued in their individual capacities. While the Sixth Circuit explicitly considered *Jett*'s application to official capacity suits in *McCrary* and *Grinter*, this Court is unaware of any case in which the Sixth

15

Circuit has expressly considered the effect of *Jett* on individual capacity suits.  In both *McCrary* and *Grinter*, the Sixth Circuit chose to affirm the dismissal of individual capacity § 1981 claims on other grounds.  In a single paragraph in *McCrary*, the Sixth Circuit affirmed the dismissal of the plaintiff's § 1981 claims against Ohio Department of Human Services employees sued in their individual capacities on grounds that the employees were immune from suit because their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *McCrary*, No. 99-3597, 2000 WL 1140750, at *2.  The *McCrary* court did not specifically address whether such claims are cognizable under *Jett*.

The Sixth Circuit took a similar approach in *Grinter*.  In that case, the plaintiff asserted § 1981 equal protection claims against a state prison guard in his official and individual capacities.  The district court dismissed the official capacity claim on Eleventh Amendment immunity grounds and dismissed the individual capacity claim on the ground that, pursuant to *Jett*, such claims must be brought under § 1983.  *See Grinter v. Knight*, No. Civ.A. 504CV224R, 2005 WL 1653615, at *9-10 (W.D. Ky. July 12, 2005).  The district court reasoned that because the defendant was an employee of the Department of Corrections, an agency of the state, he was a state actor.  *Id*. at *9.  On appeal, the Sixth Circuit affirmed the dismissal of the § 1981 claims, but on different grounds.  The Sixth Circuit first held that pursuant to *Jett*, § 1983 provides the exclusive remedy for violations against state actors sued in their official capacities.  *Grinter*, 532 F.3d at 576-77.  The court did not consider whether the same would hold true for individual capacity claims.  Rather, when the court turned its attention to the plaintiff's § 1981 individual capacity claim, the court disposed of it with little discussion on the ground that the plaintiff failed to plead sufficient factual allegations to state a claim, noting in a footnote that the court

"may affirm a district court for any reason, including a reason not considered by the court." *Id.* at 577 n.7.

The Court recognizes that *Grinter* and *McCrary* could be read as implying that a plaintiff can bring an individual capacity claim against a state employee directly under § 1981.[6] However, this Court declines to read such a holding into those cases.[7] And this Court is not alone in declining to do so. After *Grinter* and *McCrary*, at least one court in this district has dismissed § 1981 individual capacity claims against county employees on the ground that the claims should have been brought under § 1983. *Carter v. Delaware Cnty. Bd. of Com'rs*, No. 2:07-cv-1189, 2009 WL 544907, at *6 (S.D. Ohio March 3, 2009) (Holschuh, J.). Indeed, as discussed below, this Court believes that the reasoning behind the Supreme Court's opinion in *Jett* that state actors may not be sued directly under § 1981 applies with equal force to official capacity and individual capacity claims.

The cases Plaintiff relies on in support of her argument that *Jett* does not apply to individual capacity claims do not sway this Court towards Plaintiff's position. Plaintiff cites *Runyan v. McCrary*, 427 U.S. 160 (1976) for the proposition that § 1981 contains an implied cause of action against individuals who violate its provisions. The Court does not doubt the truth of that proposition. However, *Runyan* did not involve state actors. Rather, the defendants in

---

[6] *See Randall v. Memphis City Schools*, No. 09-2267-STA, 2010 WL 4392538, at *4 (W.D. Tenn. Oct. 29, 2010) (interpreting *Grinter* as holding that § 1981 does permit a cause of action against a state actor in his individual capacity).

[7] There are many reasons why the *Grinter* and *McCrary* courts may have chosen to affirm the dismissal of the plaintiff's individual capacity § 1981 claim on a basis other than that § 1983 provides the exclusive remedy for such claims. It may be that the Sixth Circuit simply found it more expedient to dispense with the claim on other grounds. It may also have been the case that the panel was able to reach agreement on certain grounds for dismissal but not others.

*Runyan* were proprietors of a *private* school. *Id*. at 164. Therefore, *Runyan* has little bearing on whether a plaintiff may sue a state actor in his or her individual capacity directly under § 1981.

Plaintiff also relies on *Allen v. Ohio Dep't of Rehabilitation & Correction*, 128 F. Supp. 2d 483, 491 (S.D. Ohio 2001) (Marbley, J.). In that case, the district court held that the Eleventh Amendment did not bar § 1981 claims against state employees in their individual capacities and then went on to analyze the merits of those claims. The Court did not engage in an analysis of whether the claims were permissible under *Jett* or whether the plaintiff should have plead the claims under § 1983. *Id*. at 491, 495.

In contrast to *Allen*, in which the district court assumed that it was possible to bring a § 1981 claim against a state actor in his individual capacity, a few district courts within the Sixth Circuit have expressly determined that such claims are not cognizable under *Jett*. *See Carter*, No. 2:07-cv-1189, 2009 WL 544907, at *1, 6 (dismissing both official and individual capacity § 1983 claims on the ground that the defendant government employees were sued for actions taken in the context of their employment and § 1983 provides the exclusive remedy for § 1981 claims against state actors); *McCarroll v. DeSantis*, No. 2:04-CV-00900, 2006 WL 745180, at *8 (S.D. Ohio March 17, 2006) (Graham, J.) (holding the same with regard to defendants who were employees of a state university); *see also Johnson v. City of Franklin, Kentucky*, No. 1:04-CV-00197-R, 2005 WL 1661975, at *1, 5-6 (holding that the defendant officers, who were sued in their official and individual capacities, are not amenable to suit under § 1981 because they are state actors, meaning the plaintiff's exclusive recourse is under § 1983).

Looking outside of the Sixth Circuit, this Court finds the Fifth Circuit's approach to §

18

1981 individual capacity claims against state actors in *Felton, v. Polles*, 315 F.3d 470 (2002)[8] to

be particularly persuasive.[9]  In *Felton*, the Fifth Circuit addressed the question of whether a

"state employee [can] assert a claim against his supervisor, in his individual capacity, for

violation of 42 U.S.C. § 1981. . ., when that § 1981 right has not been asserted through 42 U.S.C.

§ 1983."  *Id*. at 473-74.  The Fifth Circuit answered that question in the negative.  In doing so,

the court pointed to the fact that "*Jett* repeatedly phrases its holding with respect to 'state actors'

– not simply governmental entities."  *Id*. at 482.  The court also cited pre-*Jett* Supreme Court

precedent indicating that "'state employment is generally sufficient to render the defendant a

state actor.'"  *Id*. (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 n.18 (1982)).

The Fifth Circuit therefore held that *Jett* applied not only to governmental units, but also to

individuals, whether sued in their official or individual capacities, who qualify as "state actors."

*Id*. at 482.

---

[8] *Felton* was abrogated on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

[9] This Court is not alone in finding *Felton* persuasive.  *See Westbrook v. City Univ. of New York*, 591 F. Supp. 2d 207, 222-23 (E.D.N.Y. 2008) (noting in an opinion dismissing § 1981 claims against public university employees in their individual capacities that "the holding in *Jett* has subsequently been interpreted [in *Felton*] to encompass not only governmental entities but also individuals sued in their individual capacities who are 'state actors'"); *Roddini v. City Univ. of New York*, No. 02 Civ. 4640(LAP), 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003) (same); *N. Carolina Supported Emp't v. N. Carolina Dep't of Health and Human Serv.*, 2010 WL 4696556, at *4 (E.D.N.C. Nov. 12, 2010) (dismissing § 1981 individual capacity claims under *Jett* and *Felton*, because "defendants named by plaintiffs in their § 1981 claim are state actors, regardless of whether they are sued in their official or individual capacities"); *Burbank v. Office of Atty. Gen. of Connecticut*, 240 F. Supp. 2d 167, 174-75 (D. Conn. 2003) (holding, based in part on *Felton*, that § 1983 constituted the plaintiff's exclusive remedy for the alleged § 1981 violation by the defendant state official, whether the defendant was sued in official or individual capacity); *Young v. Bethlehem Area Vo-Tech School*, No. 06-CV-2285, 2007 WL 674617, at *5 (E.D. Pa. Feb. 28, 2007) (agreeing with *Felton*); *Alexander v. Chattahoochee Valley Cmty. Coll.*, 325 F. Supp. 2d 1274, 1277 n.1 (M.D. Ala. 2004) (same).

This Court finds that it would be illogical to conclude that *Jett* would bar plaintiffs from suing governmental units and state actors in their official capacities directly under § 1981, but would not bar such claims against individuals who otherwise qualify as state actors but are sued in their individual capacities. The reasoning upon which the Supreme Court based its opinion in *Jett* applies with equal force to individual capacity claims. Specifically, the Court should not imply a damages remedy in § 1981 for state actors sued in their individual capacities where such claims are already covered by a separate remedial scheme. As stated by the Supreme Court in *Jett*: "That we have read § 1 of the 1866 Act to reach private action and have implied a damages remedy to effectuate the declaration of rights contained in that provision does not authorize us to do so in the context of the 'state action' portion of § 1981, where Congress has established its own remedial scheme." 491 U.S. at 731. Section 1983 – the remedial scheme to which the Supreme Court refers – applies not only to claims against governmental units and official capacity claims. It also provides a remedy for plaintiffs seeking to sue state actors in their individual capacities for alleged violations of the rights set forth in § 1981. This does not mean that a plaintiff may never sue an individual under § 1981 simply because that individual happens to be a state employee. Indeed there may be cases in which a plaintiff seeks to hold a state employee liable for alleged violations of § 1981 that are completely attenuated from the defendant's status as a state employee, such as where the alleged violations occurred in the context of the defendant's private side-business. However, where, as here, the plaintiff attempts to hold state employees liable for actions taken in the context of and under authority derived from their state employment, the proper remedial scheme is § 1983. *See Victors v. Kronmiller*, 553 F. Supp. 2d 533, 542-43 (D. Md. 2008) (rejecting the plaintiffs' argument that "*Jett* does not

apply because plaintiffs [] brought suit against State Defendants as 'individual actors'" because even if the plaintiffs sued the defendant state employees "in their individual, rather than their official, capacities, the individual defendants are nonetheless state, not private, actors"); *supra* note 9.

As the Court has determined that Plaintiff cannot bring claims against Defendants, whether in their official or individual capacities, directly under § 1981, the Court hereby dismisses Plaintiff's official capacity and individual capacity § 1981 claims against Defendants Schilling, Messman-Moore, and Wright for failure to state a claim.

**B.      ADA and Rehabilitation Act Claims**

Defendants argue that Plaintiff's ADA and Rehabilitation Act claims are subject to a two-year statute of limitations, which would have accrued as of the date that Plaintiff first learned of the faculty's decision to deny her promotion to doctoral status.  To the extent that is true, Plaintiff's claims, which were not filed until April 23, 2010, almost four years after the date of the faculty's vote, would be time-barred.

In response, Plaintiff does not attempt to show that her claims would be timely under a two-year statute of limitations.  Rather plaintiff argues that her claims are subject to longer statutes of limitations.  Specifically, Plaintiff argues the Court should apply a six-year statute of limitations to her ADA claims and a four-year statute of limitations to her Rehabilitation Act claims.

Neither the ADA nor the Rehabilitation Act contains a limitations period.  *See Southerland v. Hardaway Mgmt. Inc.*, 41 F.3d 250, 254 (6th Cir. 1994) (Rehabilitation Act). When dealing with federal statutes that provide causes of action but do not specify a limitations

21

period for those actions, courts are faced with two possible avenues for selecting the appropriate statute of limitations. First, if the federal cause of action arises under an "Act of Congress" enacted after December 1, 1990, it would be governed by 28 U.S.C. § 1658, which provides that all such claims are subject to a four-year statute of limitations. With regard to all other federal causes of action, the Supreme Court has held that if no statute of limitations is specified, courts should borrow a time limitation from the most analogous state law, so long as the application of state law is consistent with the Constitution and laws of the United States. *Wilson*, 471 U.S. at 267.

The *Wilson* Court, which was faced with determining the appropriate statute of limitations for 42 U.S.C. § 1983, held that the most analogous cause of action under state law is a tort action for personal injuries. *Id*. at 280. Citing *Wilson*, several courts have also applied the statute of limitations for state personal injury actions to ADA and Rehabilitation Act claims. *See James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 769 (6th Cir. 2000); *Southerland*, 41 F.3d at 255 (citing numerous cases in other circuits); *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402 (6th Cir.1991); *Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475, 482-83 (N.D. Ohio 2007). Nonetheless, Plaintiff argues that in this case, the Court should not follow that approach. With regard to her ADA claims, Plaintiff alleges that Ohio's personal injury statute of limitations is not the most analogous state law and therefore should not be applied to her claims. With regard to her Rehabilitation Act claims, Plaintiff argues that her claims were made possible by post-1990 amendments to the Act and are therefore subject to the four-year statute of limitation set forth in 28 U.S.C. § 1658.

### 1.    ADA Claims

Plaintiff argues that the Ohio cause of action most analogous to her ADA claims is not Ohio's personal injury action, but rather Ohio Revised Code § 4112.99, which provides a cause of action for violations of the Ohio Civil Rights Act.[10]  Section 4112.99 claims are, with limited exception, subject to the six-year statute of limitations set forth in Ohio Revised Code § 2305.07. Defendants, citing numerous cases from the federal district courts in the Northern and Southern District of Ohio, argue that the appropriate statute of limitations for ADA claims brought in federal courts in Ohio is the two-year statute of limitations applicable to personal injury actions under Ohio law.  *See McVicker v. Hartfield*, No. 2:08-cv-1110, 2009 WL 2431257, at *11 (S.D. Ohio Aug. 6, 2009) (Graham, J.); *Gentry v. The Renal Network*, 636 F. Supp. 2d 614, 616 (N.D. Ohio 2009); *Frank*, 621 F. Supp. 2d at 482-83; *Knapp v. City of Columbus*, No. 2:01-cv-255, 2002 WL 1578828, at *3 (S.D. Ohio Apr. 26, 2002) (Holschuh, J.), *rev'd in part on other grounds*, 93 F. App'x 718 (6th Cir. 2004).

The Sixth Circuit has not yet determined which Ohio cause of action is most analogous to claims brought under the ADA, though there is case law, including caselaw addressing similar Rehabilitation Act claims, that suggests the Sixth Circuit would find that Ohio's cause of action for personal injury, which is subject to a two-year statute of limitations, is most analogous.  In *Southerland*, a case brought in federal court in Kentucky, the Sixth Circuit concluded that Rehabilitation Act claims are similar to the § 1983 claims discussed previously in *Wilson* and

---

[10] Plaintiff appears to make this argument only with regard to her ADA claims, possibly because the Sixth Circuit has already held that a Rehabilitation Act claim brought in federal court in Ohio was subject to a two-year statute of limitations.  *James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 769 (6th Cir. 2000).

applied Kentucky's personal injury statute of limitations to the plaintiff's Rehabilitation Act

claim. 41 F.3d at 254-55. In that case, the plaintiff argued that the Sixth Circuit should follow

*Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993) and apply the

statute of limitations applicable to claims arising under the Kentucky Equal Opportunities Act.

In *Wolsky*, the Fourth Circuit concluded that the Virginia Rights of Persons with Disabilities Act

was more analogous to the plaintiff's Rehabilitation Act claim that Virginia's personal injury

cause of action. 1 F.3d at 225. The *Wolsky* court based its decision on the fact that the Virginia

Act was actually modeled after the Rehabilitation Act and contained its own one-year statute of

limitations. *Id*. In *Southerland*, the Sixth Circuit chose not to follow the Fourth Circuit,

distinguishing *Wolsky* on the basis that the Kentucky Equal Opportunities Act was not modeled

after the Rehabilitations Act and did not contain its own statute of limitations. *Southerland*, 41

F.3d at 255. The Sixth Circuit instead found that the most analogous cause of action was

Kentucky's personal injury action, noting that several other courts of appeal have applied state

statutes of limitations governing personal injury actions to claims brought under the

Rehabilitation Act. *Id*. (citing *Baker v. Board of Regents of State of Kan.*, 991 F.2d 628, 631

(10th Cir. 1993); *Bush v. Commonwealth Edison Co.*, 990 F.2d 928 (7th Cir. 1993), *cert. denied*,

511 U.S. 1071 (1994); *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980 (5th Cir. 1992); *Morse v.

University of Vt.*, 973 F.2d 122 (2d Cir. 1992)).

      Six years after its decision in *Southerland*, the Sixth Circuit addressed the statute of

limitations issue in two more cases. In *Lewis v. Fayette County Detention Ctr.*, No. 99-5538,

2000 WL 556132, at *2 (6th Cir. Apr. 28, 2000), the Sixth Circuit applied the statute of

limitations for personal injury actions to an ADA claim brought in Kentucky. In its reasoning,

24

the Sixth Circuit noted that "courts faced with ADA or Rehabilitation Act claims have . . . looked to the state's statute of limitations for personal injury actions." *Id.*  That same year, the Sixth Circuit also applied the statute of limitations for personal injury actions to a Rehabilitation Act claim brought in federal district court in Ohio.  *James*, 228 F.3d at 769.  Finally, last year the Sixth Circuit reaffirmed that holding in *Bishop v. Children's Center for Developmental Enrichment*, ruling that the "nearest analogous statute" for Rehabilitation Act claims in Ohio is "Ohio Revised Code § 2305.10 which provides a two-year statute of limitations period" for personal injury claims.  618 F.3d 533, 536 (6th Cir. 2010).

Therefore, although the Sixth Circuit has not conclusively held which limitations period applies to ADA Title II claims in Ohio, the above case law suggests that the Sixth Circuit would apply the two-year statute of limitations for Ohio's personal injury actions.  First, the Sixth Circuit has indicated that it treats ADA and Rehabilitation Act claims similarly.  Second, the Ohio Civil Rights Act is distinguishable from the Virginia Act discussed in *Wolsky* for similar reasons as cited by the Sixth Circuit when that court distinguished the Kentucky Equal Opportunities Act in *Southerland*.  Specifically, the Ohio Civil Rights Act was not modeled after the ADA or Rehabilitations Act and does not contain its own statute of limitations.[11]  *See Frank*,

---

[11] The current version of Ohio Revised Code § 4112.99 provides that "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."  The Ohio Civil Rights Act does not contain its own statute of limitations for disability actions brought under that statute.  *See Meyer v. United Parcel Service, Inc.*, 122 Ohio St.3d 104, 110, 909 N.E.2d 106, 112 (Ohio 2009) (noting that § 4112.99 does not provide its own statute of limitations).  In 1994, the Ohio Supreme Court chose from various statutes of limitations contained elsewhere in the Ohio Revised Code when it concluded that § 4112.99 is subject to the six-year statute of limitations set forth in § 2305.07.  *See id.*; *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 638 N.E.2d 991 (Ohio 1994).  In 1996, perhaps in response to *Cosgrove*, the Ohio General Assembly attempted to establish a two-year statute of limitations for all employment-discrimination claims by amending several portions of Ohio

621 F. Supp. 2d at 483.

Indeed, several courts in the Northern and Southern Districts of Ohio, including this Court, have subjected ADA claims to the two year limitations period applicable to personal injury actions in Ohio. *See Bay v. Clermont County Sheriff's Dep't*, No. 1:08-cv-376, 2010 WL 5014226, at *4 n. 4 (S.D. Ohio Nov. 3, 2010) (Litkovitz, Mag. J.), *report and recommendation adopted by* 2010 WL 4976728 (S.D. Ohio Dec. 1, 2010) (Dlott, J.); *McNeil v. Medcentral Health System*, No. 1:10CV2338, 2010 WL 4860359, at *1 (N.D. Ohio Nov. 23, 2010); *McVicker*, No. 2:08-cv-1110, 2009 WL 2431257, at *11; *Gentry*, 636 F. Supp. 2d at 616; *Frank*, 621 F. Supp. 2d at 482-83; *Knapp*, No. 2:01-cv-255, 2002 WL 1578828, at *3; *Deck v. City of Toledo*, 56 F. Supp. 2d. 886, 891 (N.D. Ohio 1999).[12]

Of those cases, the instant case is most similar to *Frank*, in which a disabled veteran who had failed his comprehensive exam while enrolled in a doctoral program at University of Toledo

_____

Revised Code Chapter 4112, including § 4112.99. *See Meyer*, 122 Ohio St. 3d at 110 n.8, 909 N.E.2d at 112 n.8. However, in 1999, the Ohio Supreme Court held that the bill amending Chapter 4112 was unconstitutional in its entirety. *See id.* (citing *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St. 3d 451, 715 N.E.2d 1062 (Ohio 1999)). As a result, those amendments were invalidated, and the General Assembly revived the prior versions of those statutes, meaning that *Cosgrove* still governs the statute of limitations applicable to disability claims brought under § 4112.99. *See Benge v. General Motors Corp.*, 267 F. Supp. 2d 794, 799 (S.D. Ohio 2003).

[12] *Deck* was decided during the short window of time when claims under Ohio Revised Code § 4112.99 were subject to a two-year rather than a six-year statute of limitations. *See supra* note 11. Accordingly, the *Deck* court noted that the question of which Ohio cause of action – personal injury or civil rights – is most analogous to the ADA, was at that time purely an academic discussion. Under either conclusion, the statute of limitations would have been two years. Nonetheless, the *Deck* court determined that "the most analogous statute to the ADA in Ohio appears to be the state personal injury statute." 56 F. Supp. 2d. at 891. Moreover, as noted above, in several cases decided after the change in law doing away with the two-year statute of limitations for § 4112.99 claims, court have continued to apply the personal injury statute of limitations to ADA claims.

sued the University under the ADA and Rehabilitation Act, alleging that they failed to accommodate his disability.  621 F. Supp. 2d at 478-479, 487-488.  The University moved to dismiss the plaintiff's claims on statute of limitations grounds and the plaintiff responded that his cause of action was most analogous to relief provided in Ohio Revised Code § 4112.022, which addresses accommodations by educational institutions, and § 4112.99, which provides a cause of action for violations of § 4112.022.   The Northern District of Ohio rejected the plaintiff's argument.  In doing so, the court engaged in an in-depth analysis of *Wolsky* and of case law within the Sixth Circuit, ultimately concluding that the plaintiff's claims were subject to the two-year statute of limitations applicable to personal injury claims.  *Id*. at 482-83.

This court agrees with the conclusion of the *Frank* court and of the other district courts who have addressed this issue.  Plaintiff's ADA claim is subject to a two-year statute of limitations and therefore is time-barred.

### 2.        Rehabilitation Act Claims

As noted above, the Sixth Circuit holds that Rehabilitation Act claims brought in Ohio generally are subject to a two-year statute of limitations.  *See James*, 228 F.3d at 769; *Bishop*, 618 F.3d at 536.  While accepting that premise, Plaintiff argues that her Rehabilitation Act claims arise under the 1992 amendments to the Act, and therefore her claims are governed by 28 U.S.C. § 1658.  Defendants respond that Plaintiff attaches undue significance to the 1992 amendments to the Rehabilitation Act and that Plaintiff's claim in this case actually arises under the Rehabilitation Act as originally enacted in 1973.

Congress enacted § 1658 to provide "a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990, that do not include a limitations

provision." *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  In *Jones*, the

Supreme Court was faced with the question of how to determine whether a cause of action arises

under an act of Congress enacted after December 1, 1990.  The Supreme Court rejected the

conclusion reached by the Seventh Circuit that § 1658 "applies only when an act of Congress

creates a wholly new cause of action, one that does not depend on the continued existence of a

statutory cause of action previously enacted and kept in force by the amendment." *Id*. at 374.

The Supreme Court deemed that conclusion to be too narrow and instead found that: "An

amendment to an existing statute is no less an 'Act of Congress' than a new, stand-alone statute.

What matters is the substantive effect of an enactment – the creation of new rights of action and

corresponding liabilities – not the format in which it appears in the Code." *Id*. at 381.  The Court

then concluded, "a cause of action 'aris[es] under an Act of Congress enacted' after December 1,

1990 – and therefore is governed by § 1658's 4-year statute of limitations – if the plaintiff's

claim against the defendant was made possible by a post-1990 enactment." *Id*. at 382.

Plaintiff alleges Rehabilitation Act claims under 29 U.S.C. § 794, based on her exclusion

from the University of Miami's Ph.D. program.  Specifically, Plaintiff alleges the following:

> At all times relevant hereto, plaintiff, (1) is a qualified person with a disability
> under the Rehabilitation Act, 29 U.S.C. § 794(b); (2) is otherwise qualified for the
> Ph.D. program at Miami University; (3) is being subjected to discrimination
> solely by reason of her disability; and, (4) Miami University and its psychology
> program, including the Ph.D. program receive federal financial assistance.

(Complaint ¶ 45.)  In her opposition to Defendants' Motion to Dismiss, Plaintiff argues that the

1992 amendments to the Rehabilitation Act expanded the meaning and scope of the definition of

"individuals with disabilities" and expanded the substantive rights afforded to disabled

Americans.  (Doc. 11 at 6.)  She also argues that her claims would not have been possible prior

28

to those amendments.

Prior to the 1992 amendments to the Act, 29 U.S.C. § 794 provided in relevant part as follows:

(a)  Promulgation of rules and regulations

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

(b) "Program or activity" defined

For the purposes of this section, the term "program or activity" means all of the operations of— . . .
(2)(A) a college, university, or other postsecondary institution, or a public system of higher education; . . .
any part of which is extended Federal financial assistance.

In 1992, Congress amended § 794(a) to substitute "a disability" for "handicaps" and "disability" for "handicap."  Pub. L. 102-569, Title I, § 102(p)(32) (Oct. 29, 1992).  Congress also added a new subsection (d), which provides as follows:

(d) Standards used in determining violation of section

The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment.

29

Pub. L. 102-569, Title V, § 506 (Oct. 29, 1992).

Plaintiff argues, with little explanation, that the 1992 amendments made her claims possible because she would not have met the definition of "disabled" under the previous version of the statute.  (Doc. 14 at 4.)  In support of that argument, Plaintiff relies on *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), a case in which the Third Circuit determined that § 1658's four-year statute of limitations applied to a claim of employment discrimination under the Rehabilitation Act.  In that case, the plaintiff alleged a claim based on her former employer's failure to transfer her to a different position prior to or upon eliminating her position.  *Id*. at 206. With regard to the statute of limitations, the court noted that the case presented a different scenario than other cases in which the court had applied the most analogous state statute of limitations to Rehabilitations Act claims because failure to transfer claims were not possible under the Rehabilitation Act until after the 1992 addition of subsection (d) to § 794:

> The Rehabilitation Act, originally enacted in 1973, provides that "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a).  This general prohibition against disability-based discrimination by recipients of federal funding was in effect well before December 1, 1990.  Employers were required to make "reasonable accommodation" for a disabled employee's limitations.  Employers were not required to transfer a disabled employee to a vacant position as an accommodation of his or her disability.  This changed, however, with the enactment of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.
>
> The ADA identified the reassignment of a disabled employee to a vacant position as a "reasonable accommodation" of an employee's disability. 42 U.S.C. § 12111(9).  Under the ADA's Title I, an employer's failure to transfer a disabled employee to a vacant position constitutes discrimination.  *Id*.  After the ADA went into effect, Congress amended the Rehabilitation Act by incorporating the ADA's substantive standards for determining whether a covered employer has engaged in illegal discrimination.  This conforming amendment was codified at 29 U.S.C. § 794(d) . . . The standards for determining whether a covered

30

employer has violated § 794(d) have been coextensive with the standards for determining whether a covered employer has violated the ADA ever since. Therefore, employers who are covered under § 794(a) of the Rehabilitation Act are required to transfer a disabled employee to vacant positions for which she is qualified where necessary to accommodate her disability. Since failure-to-transfer claims can be brought as a result of this statutory amendment-an amendment enacted after December 1, 1990-they are subject to a four-year limitation of actions.

*Id.* at 208 (internal citations and footnote omitted).

*Fowler* is distinguishable from the instant case on several grounds, the most important of which is that *Fowler* involved employment discrimination, while this case involves a claim of discrimination with regard to access to higher education. Subsection 794(d), the subsection under which the *Fowler* court found the plaintiff's claim arose, only identifies the "standards [to be] used to determine whether [§ 794] has been violated in a complaint alleging *employment discrimination* . . .." 29 U.S.C. § 794(d) (emphasis added). Accordingly, § 794(d) is not applicable to the instant case.

In this case, Plaintiff alleges a general disability-based discrimination claim against an institution of higher education, a claim that § 794(a) provided well before December 1, 1990. Plaintiff has not explained her allegation that her claim would not have been possible but for the 1992 amendments to the Rehabilitation Act. Nor has she pointed to any case law supports her position. Accordingly, the Court finds that 28 U.S.C. § 1658 does not apply to Plaintiff's Rehabilitation Act claim. The appropriate statute of limitations in this case is the two-year statute of limitations applicable to personal injury actions under Ohio law. *See James*, 228 F.3d at 769; *Frank*, 621 F. Supp. 2d at 482-83 (post-*Jones* case in which the Northern District of Ohio held that a similar Rehabilitation Act claim based on discrimination in higher education was subject to a two-year statute of limitations). Like Plaintiff's ADA claim, Plaintiff's

31

Rehabilitation Act claim is time-barred.

### C.     State Law Claims

The Court finally turns to Plaintiff's state law claims.  In Counts 1, 2, and 4 of her Complaint, Plaintiff asserts claims of retaliation and discrimination under Ohio Revised Code §§ 4112.02 and 4112.99.  In Counts 5 and 6 of her Complaint, Plaintiff alleges additional state law claims for breach of contract and breach of public policy.  Defendants move to dismiss all of Plaintiff's state law claims on the basis that they are barred by the Eleventh Amendment and that, alternatively, the Plaintiff should have brought her claims in the Ohio Court of Claims as opposed to Federal court.  In her response, Plaintiff does not address her state common law claims.  Accordingly, the Court finds that Plaintiff waived those claims.  The Court addresses Plaintiff's statutory claims below.

### 1.     Official Capacity Claims and Claims Against the University

Defendants argue that the Eleventh Amendment bars Plaintiff's state law claims under Ohio Revised Code Chapter 4112 and Ohio common law to the extent those claims are asserted against the University or Defendants Schilling, Messman-Moore, and Wright in their official capacities.  In the alternative, Defendants argue that Ohio Revised Code § 2743 precludes plaintiff from pursuing her state law claims against Miami University or the individual defendants in their official capacities because it provides the Ohio Court of Claims with exclusive jurisdiction over Plaintiff's state law claims.

Plaintiff responds that: (1) the United States Congress abrogated state sovereign immunity with respect to public higher education; and (2) the language of Chapter 4112 should be interpreted as waiving Ohio's statutory immunity for purposes of claims arising under that

chapter.  With regard to her first argument, Plaintiff cites two cases – *United States v. Georgia*, 546 U.S. 151, 158-59 (2006), and *Tennessee v. Lane*, 541 U.S. 509, 522-31 (2004) – neither of which support her position.  Those cases address the narrow issue of whether Congress's express abrogation of the Eleventh Amendment with respect to Title II of the ADA was valid.  *See Georgia*, 546 U.S. at 157-59; *Lane*, 541 U.S. at 533-34.  Neither case stands for the broad proposition that Congress has abrogated state sovereign immunity with regard to all claims touching on public higher education.

Plaintiff's next argument, that Ohio waived its immunity to claims brought under Chapter 4112, has been considered and rejected by a number of courts.  *See Dendinger v. Ohio*, 207 F. App'x 521, 529 (6th Cir. 2006) ("[T]he Eleventh Amendment deprives the federal courts of the power to entertain suits on claims such as [those arising under Ohio Revised Code § 4112.02].")*; Bialczak v. State*, No. 99-3841, 2000 WL 1888789, at *2 (6th Cir. Dec. 22, 2000) ("Ohio Revised Code § 4112.99 authorizes suit against the State of Ohio as an employer in its Court of Claims, but the statute does not waive the State's Eleventh Amendment immunity from suit in federal court.")*; Robertson v. Rosol*, Nos. 2:06-cv-1087, 2:06-cv-1088, 2007 WL 2123764, at *4 (S.D. Ohio July 20, 2007) ("It is a clear point of law that the State of Ohio has not consented to suit in federal court by enacting Ohio Rev. Code § 4112 *et seq*.")*; Henry*, 162 F. Supp. 2d at 803 ("[T]he State of Ohio and its departments have not consented to be sued in federal court under [Ohio Revised Code § ] 4112.")*; Stein v. Kent State University Bd. of Trustees*, 994 F. Supp. 898, 902-03 (N.D. Ohio 1998) ("Enactment by the Ohio legislature of § 4112.01 *et seq*., the anti-discrimination statute, did not explicitly abrogate the state's Eleventh Amendment immunity from suit in federal court.  It simply authorized suit of the state as employer in a court of

33

competent jurisdiction, which in Ohio is limited to the Court of Claims."); *Mackey v. Cleveland State Univ.*, 837 F. Supp. 1396, 1403 (N.D. Ohio 1993) ("[Section] 4112.01 *et seq*. . . . did not explicitly abrogate the state's Eleventh Amendment immunity from suit in federal court.").

Because Miami University is considered an arm of the state, the Eleventh Amendment precludes plaintiff from directly suing the University in federal court in connection with her state law claims. *See Johnson*, 215 F.3d at 571; *Adamow*, No. C-1-05-104, 2007 WL 2886345, at *9. Additionally, the State's Eleventh Amendment immunity extends to state officials. *Turker v. Ohio Dep't of Rehab. and Corr.*, 157 F.3d 453, 457 (6th Cir. 1998) ("[A] federal court cannot entertain a lawsuit against state officials for violations of state law unless the state has waived its immunity under the Eleventh Amendment."). Indeed, the Eleventh Amendment bars suit against state officials sued in their official capacities based on violation of state law regardless of the relief sought. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (finding that there is no prospective relief exception to Eleventh Amendment immunity when state officials are sued on the basis of state law); *Heike v. Guevara*, 654 F. Supp. 2d 658, 671 (E.D. Mich. 2009) ("[S]overeign immunity bars suits in federal court against state officials acting in their official capacity for violations of state law, regardless of the relief sought."). Accordingly, the Court finds that Plaintiff's Chapter 4112 claims against Miami University and the official capacity Defendants are barred by the Eleventh Amendment.

### 2.    Individual Capacity Claims

Plaintiff also asserts her state law claims against Defendants Schilling, Messman-Moore, and Wright in their individual capacities. Defendants move to dismiss those claims on the ground that they are barred by Ohio Revised Code §§ 9.86 and 2743.02(F).

34

Ohio Revised Code § 9.86 confers immunity on state officers or employees

> in any civil action that arises under the law of this state for damage or injury
> caused in the performance of his duties, unless the officer's or employee's actions
> were manifestly outside the scope of his employment or official responsibilities,
> or unless the officer or employee acted with malicious purpose, in bad faith, or in
> a wanton or reckless manner.

*Id*. Ohio Revised Code § 2743.02(F) provides in relevant part:

> A civil action against an officer or employee . . . that alleges that the officer's or
> employee's conduct was manifestly outside the scope of the officer's or
> employee's employment or official responsibilities, or that the officer or
> employee acted with malicious purpose, in bad faith, or in a wanton or reckless
> manner shall first be filed against the state in the court of claims, which has
> *exclusive, original jurisdiction* to determine, initially, whether the officer or
> employee is entitled to personal immunity under section 9.86 of the Revised Code
> . . .

*Id*. (emphasis added).[13]

Several courts have interpreted those statutes to mean that a federal court may not

exercise jurisdiction over state law claims against a state employee unless the Ohio Court of

Claims first determines that the employee is not entitled to personal immunity under Ohio

Revised Code § 9.86.  *See Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989) ("Ohio law

requires that, as a condition precedent to asserting a cause of action against a state employee in

his individual capacity, the Court of Claims must first determine that the employee is not entitled

to the immunity provided for in Revised Code section 9.86.  Prior to that condition being

satisfied, then, there is no claim under Ohio law upon which relief may be granted against state

employees in their individual capacities."); *James v. Tunnell*, 2010 WL 2519654, at *4 (S.D.

---

[13] By enacting Ohio Revised Code § 2743, the State of Ohio and its departments have
consented to be sued in the Ohio Court of Claims, but not in federal court.  *See, e.g.*, *Stein*, 994
F. Supp. at 902-03.

Ohio June 16, 2010) ("The Sixth Circuit has interpreted these sections of the Ohio code to mean that 'state employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity.'" (quoting *Haynes*, 887 F.2d at 704)); *Grooms v. Marshall*, 142 F. Supp. 2d 927, 932 (S.D. Ohio 2001) ("Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86."). No evidence has been presented to the Court that an Ohio Court of Claims has determined that the Defendants are not entitled to immunity. Accordingly, this Court lacks jurisdiction over Plaintiff's state law individual capacity claims.

### D.    John and Jane Doe Defendants

The Court *sua sponte* dismisses all claims against Defendants John and Jane Does. Plaintiff's claims against those Defendants, whether they are sued individually or as agents of Miami University, fail for the same reasons as do her claims against the named Defendants.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss and hereby **DISMISSES** this case in its entirety.

IT IS SO ORDERED.

___s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court